IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| VICKI J. RYAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-03334-CV-W-HFS |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

**I.    Procedural Background**

On February 28, 2001, plaintiff applied for disability benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, et seq. (Tr. 114-16), and supplemental security benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq. (Tr. 398-400). Plaintiff alleged a disability onset date of November 1, 2000[1], due to Hepatitis C, liver failure, hyper-active thyroid, depression, severe joint pain, spastic colon, and chronic lethargy. (Tr. 133). Plaintiff's application was denied, and she timely requested a hearing. A hearing was held on April 9, 2003. (Tr. 38-96). By a decision dated June 16, 2003, the ALJ determined that plaintiff suffered from depression, a severe impairment, but that she retained the residual functional capacity ("RFC") to perform her past relevant work. (Tr. 22, 24). For the reasons set forth herein, the decision of the ALJ is reversed.

---

[1] At the outset of the hearing testimony, the alleged onset date of disability was amended to September 1, 2000. (Tr. 41).

## II.     Factual Background

The facts as set forth in the parties' briefs are thoroughly presented, and will be merely summarized here.

Plaintiff's Testimony

At the time of the hearing, plaintiff was 47 years of age, and caring for two children, ages 13 and 11. (Tr. 42-44). Plaintiff is able to do laundry on some days, cooks, and is assisted by her children when doing the grocery shopping. (Tr. 44-45). Plaintiff no longer has a drivers license because it was suspended due to an accumulation of points, including a conviction for driving while intoxicated. (Tr. 45-47). However, she continues to drive occasionally - once a week to the grocery store. (Tr. 47-48). Sometimes her two older children, ages 27 and 29, come by to help her. (Tr. 48). Plaintiff's hands swell, and the vibration of the steering wheel hurts her feet and ankles. (Tr. 48-49).

Plaintiff completed the eighth grade, and quit when she was 16. (Tr. 49). In 1992, plaintiff worked for the City of Springfield chipping brushes for about 4 to 5 months before injuring her back. (Tr. 50-51). Plaintiff filed a Worker's Compensation claim and the case was settled in 1997. (Tr. 52-54). Plaintiff has also worked as a cashier and stocker at Express Lane, Grand Mart, Brown Derby, and Bass Pro. (Tr. 56-57). She was laid off from Bass Pro after working for several months; she worked at Brown Derby for 5 to 6 months and either quit or was fired; she worked at Grand Mart for 4 to 5 months and quit; and she worked at Express Lane for 6 months before quitting. (Tr. 57-58). Plaintiff also worked as a machinist at Accurate for 8 months and quit, and she worked as an assembler at Diversified for 5 to 6 months and quit. (Tr. 59). Plaintiff worked as an assembler at GE from Jun of 2002, through September of 2002; she then worked at Fastco for 2 months building

motors and quit because she did not have the strength to continue. (Tr. 60-61). While working at Fastco, plaintiff lifted 50 pounds frequently, and while working at Diversified, the heaviest weight lifted by plaintiff was 75 pounds. (Tr. 61).

Plaintiff's primary care physician is Dr. Glenn, and she is being treated by Dr. Mark Jarek for firbromyalgia at Sparta Health Clinic; however, she has not received treatment since February of 2002. (Tr. 63-64, 67). Plaintiff has been treated by for liver problems by Dr. Hover at the Farrell Duncan clinic since May of 2001; Dr. Glenn gave her medication and advised her to "keep moving." (Tr. 64-65). Dr. Linda Macgorman treated plaintiff for a hyperactive thyroid. (Tr. 66). Plaintiff has been treated by a psychiatrist, Dr. Maria Mendez, once a month for 4 years. (Tr. 67-68). After filing for social security benefits, plaintiff was also tested for sleep apnea. (Tr. 69).

When questioned by her attorney, plaintiff testified that she continued to have back pain and muscle spasms in her legs, in addition to pain throughout her body from fibromyalgia. (Tr. 70-71). With 0 being pain free, plaintiff estimated the pain in her legs to be a 7, and the pain in her lower back, neck, arm, and hands to be an 8. (Tr. 71-72). Due to pain in her right hand, plaintiff experiences difficulty writing and sewing. (Tr. 72). Plaintiff takes medication for the pain, and experiences side effects such as fatigue, nausea, spastic colon, and acid reflux. (Tr. 73). Plaintiff uses an electric blanket at night due to pain from fibromyalgia, and sits with her feet elevated to reduce swelling in her hands and legs. (Tr. 73). Although plaintiff was diagnosed with sleep apnea, she was not advised to use a C-Pap machine. (Tr. 75). Plaintiff falls asleep involuntarily 3 to 4 times during the day. (Tr. 75-76). Plaintiff has a headache 3 times a week; she takes 800 milligrams of Ibuprofen and lies down. (Tr. 76). Due to Hepatitis C, plaintiff has pain under her rib which interferes with her activities and her sleep. (Tr. 77).

3

Plaintiff estimated that she could walk about 200 feet before requiring a rest; she could stand for 10 to 15 minutes before needing to sit; she could sit for 15 minutes, and she could lift a quart of milk. (Tr. 78). Plaintiff did not feel she could work through a business day without lying down. (Tr. 79). Plaintiff takes medication for depression, however, it continues to interfere with her activities, and makes it difficult for her to concentrate. (Tr. 79-80). Plaintiff also has anxiety attacks weekly for which she takes medication. (Tr. 81-82).

When re-examined by the ALJ, plaintiff admitted that she was diagnosed with Hepatitis C in March of 2000, but continued to drink until February of 2001. (Tr. 82-83). Plaintiff testified, however, that she was not presently drinking, and the use of alcohol did not interfere with her ability to work. (Tr. 83-84). Plaintiff felt that the anxiety attacks, and fibromyalgia interfered with her ability to work. (Tr. 84-87).

Testimony of Terry Rayford

Terry Rayford, plaintiff's friend, visits plaintiff 1 to 2 times a week, and helps her with household chores. (Tr. 87-88). According to Rayford, plaintiff complains of pain throughout her body, and she is depressed about her physical condition. (Tr. 88). Sometimes plaintiff does not want to be around other people, including Rayford. (Tr. 88-89). Rayford has known plaintiff for 15 to 20 years, and also testified that although plaintiff continued to drink after being diagnosed with Hepatitis C, she was not presently drinking. (Tr. 89).

4

Vocational Expert Testimony

Vocational expert, George Horne, testified that plaintiff's work as a cashier, and checker is a semi-skilled position in the light category, performed in the medium category. (Tr. 91-92). Her work as a food sales clerk was semi-skilled in the light category, and also performed in the medium category. (Tr. 92). Plaintiff's work as a molding machine operator and an electric motor assembler was semi-skilled in the light category, and performed in the medium to very heavy category. (Id). Her work as a lacquer machine operator was unskilled described in the medium category. (Id). The vocational expert described plaintiff's job with the City of Springfield as a landscape specialist described as unskilled medium work, and her work as a hand packager was unskilled medium work, performed in the medium to very heavy category. (Id).

The ALJ asked the vocational expert to assume an individual 47 years of age with the work history and education testified to; with some limitations in ability to engage in work activity; but could understand and remember simple and moderate complex instructions; could sustain concentration and persistence on simple and moderate complex tasks; and could interact in most social situations and adapt to her environment. (Tr. 93). Mr. Horne opined that such an individual could perform plaintiff's past relevant work.

Plaintiff's attorney then asked Mr. Horne to assume an individual whose physical impairments required that she lie down for an hour or more daily. (Tr. 94). Mr. Horne opined that such an individual could not sustain employment. (Id). Counsel also asked Mr. Horne to assume an individual of plaintiff's age, education, and past work history with the same limitations noted by the ALJ, except that the individual had marked limitations in the ability to complete a normal work day without interruption from psychological based symptoms, and was markedly limited in the ability

5

to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 94-95). Mr. Horne opined that such a hypothetical would preclude work, due to the areas of concentration, persistence, and pace. (Tr. 94-95).

**III.    Standard of Review**

Review of a final decision of the Commissioner of Social Security is limited to determining if the decision is supported by substantial evidence on the record as a whole. Mussman v. Apfel, 17 F.Supp.2d 885, 890 (S.D.Iowa 1998). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Mussman, at 890. This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal." Id. Consequently, even if the evidence may have been weighed differently, a reversal of the Secretary's decision is inappropriate when there is enough evidence in the record to support either outcome. Id.

**IV.    Analysis**

Treating Physician

Plaintiff claims that the ALJ failed to give controlling weight to her treating physicians, Dr. Paul Glynn and Dr. Maria Mendez. A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). Although

the ALJ recognized Dr. Glynn as plaintiff's family physician (Tr. 21), he found that the Medical Source Statement completed by Dr. Glynn which described plaintiff as essentially bedfast was based solely on plaintiff's statements rather than objective evidence, and therefore, gave his opinion little weight. (Tr. 22).

The record indicates that Dr. Glynn began treating plaintiff in 1999, for various ailments including sinusitis, arthritis, anxiety, and Hepatitis C. (Tr. 183-203). In a Medical Source Statement dated March 16, 2003, Dr. Glynn opined that in an 8 hour work day, plaintiff would need to rest every 2 hours, for an average period of 3 hours. (Tr. 310). In his treatment notes of May 23, 2001, Dr. Glynn diagnosed plaintiff with fibromyalgia (Tr. 305). Although the record is replete with continuous visits to Dr. Glynn seeking relief for her discomfort, the record also indicates that plaintiff did not receive physical therapy until August of 2003. (Tr. 410-43).

Plaintiff contends that the ALJ's decision in which he afforded little weight to Dr. Glynn's opinion due to his reliance on plaintiff's statements constitutes error. Plaintiff raises a valid point, for it has been held that, "A patient's report of complaints, or history, is an essential diagnostic tool. Selk v. Barnhart, 234 F.Supp.2d 1006, 1014 (S.D.Iowa 2002); quoting, Flanery v. Chater, 112 F.3d 346, 350 (8th Cir. 1997).

The ALJ also gave little weight to the opinion of Dr. Mendez due to the inconsistencies of her opinions. (Tr. 19). In a Medical Source Statement-Mental dated April 24, 2003, Dr. Mendez found that in most areas of understanding, memory, concentration, persistence, and social interaction plaintiff experienced either no significant limitation or only moderate limitation. (Tr. 325-26). Yet, in a Mental Statement dated May 1, 2003, Dr. Mendez opined that plaintiff was markedly limited in her ability to perform activities with a schedule, maintain regular attendance, and be punctual

7

within customary tolerances, and in her ability to maintain a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without a reasonable number and length of rest periods[2]. (Tr. 395). As previously noted in testimony by the vocational expert, limitations in the area of concentration, persistence, and pace generally precludes an ability to work. (Tr. 94-95).

In any event, plaintiff argues that the latter opinion was based on plaintiff's condition prior to September 30, 2002. While the 5/1/03 medical statement notes that it addresses plaintiff's mental impairments "AS OF 9/30/2002 AND BEFORE," plaintiff fails to show why the information upon which this statement is based was not capable of being set forth in the medical statement rendered by Dr. Mendez one week prior. Plaintiff correctly argues, however, that retrospective medical diagnoses constitute relevant evidence concerning the degree of disability prior to the expiration of the insured period. Selk v. Barnhart, 234 F.Supp.2d at 1013-14. Which here, is September 30, 2002. Moreover, treatment notes reflect visits to Dr. Mendez from 1999 through 2002 (Tr. 328-92), and April through July of 2003 (Tr. 451-58), and that Dr. Mendez consistently prescribed medications including Xanax, Celexa, and Amitriptyline for plaintiff throughout this time.

There is no dispute that Drs. Glynn and Mendez are plaintiff's treating physicians, and are specialists in their respective fields; therefore, their opinion would normally be accorded significant weight. Under the circumstances presented in this case, it cannot be said that the ALJ's reluctance to accord such weight to the opinion of Dr. Mendez was complete error. However, it was error to

---

[2]In its brief, defendant argues that plaintiff's failure to appear for multiple physical therapy appointments is inconsistent with complaints of a disabling condition. (Defendant's Brief: pg. 11). However, this conduct appears to be consistent with, and supported by Dr. Mendez's opinion regarding plaintiff's abilities prior to September of 2002.

8

dismiss Dr. Glynn's opinion as noted in the 3/16/03 Medical Source Statement, for it was part of a larger record that fully supported his opinion. Forehand v. Barnhart, 364 F.3d 984, 986 (8th Cir. 2004). Where a history of treatment for fibromyalgia has been established and is supported by the medical record, it is error for an ALJ to give the treating physician's opinion little weight. Forehand, at 986; see also, Cox v. Barnhart, 345 F.3d 606, 608 (8th Cir. 2003).

Severe Impairment

Plaintiff also contends that the ALJ erred in failing to find fibromyalgia to be a severe impairment, and erred in finding that plaintiff's depression had only a minimal effect on her ability to perform past relevant work. In his decision, the ALJ found that based on the medical evidence as it related to plaintiff's claim of fibromyalgia, her claims of aches and pain did not constitute a medically determinable, severe impairment. (Tr. 21). However, the ALJ found that plaintiff had medically determinable severe impairments of depression, but it did not cause the degree of limitations alleged by plaintiff. (Tr. 22).

Plaintiff argues that "based upon the mountain of evidence" supporting her claim of fibromyalgia, the ALJ's finding was erroneous. According to plaintiff, Dr. Glynn's numerous references of fibromyalgia constitutes a "mountain of evidence." Plaintiff also raises a question as to the ALJ's understanding of fibromyalgia. As previously noted, plaintiff was diagnosed with fibromyalgia in 2001, and this diagnosis is repeated throughout Dr. Glynn's treatment notes. On May 17, 2001, Dr. Glynn referred plaintiff to rheumatologist, Dr. Mark J. Jarek, who also noted plaintiff's complaints of poor sleep and muscle tenderness. (Tr. 211). He too diagnosed fibromyalgia

9

and provided plaintiff with an educational brochure on the subject, and advised her of the need for regular exercise and proper sleep. (Tr. 213).

Fibromyalgia is a chronic condition, usually diagnosed after eliminating other conditions. Garza v. Barnhart, 397 F.3d 1087, 1089 (8th Cir. 2005); see also, Forehand v. Barnhart, 364 F.3d 984, 987 (8th Cir. 2004). No confirming diagnostic tests exist, and the Eighth Circuit has long recognized fibromyalgia might be disabling. Garza, at 1089. Moreover, fibromyalgia "often leads to a distinct sleep derangement which often contributes to a general cycle of daytime fatigue and pain." Forehand, at 987; quoting, Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 2003). In light of the medical reports of Dr. Glynn, and to a lesser extent, Dr. Jarek's report, it appears that the ALJ gave little weight to the consistent diagnosis of fibromyalgia or its debilitating effect on plaintiff. Forehand, at 987. Consequently, the ALJ's failure to give greater consideration to plaintiff's condition of fibromyalgia was error[3].

Consulting Physicians

Plaintiff argues that the ALJ erred in relying on the consultative examination of Dr. David Lutz, as well as the psychiatric review prepared by Dr. Elissa Lewis. On June 22, 2001, and at the behest of Disability Determinations, Dr. Lutz, a clinical psychologist, met with plaintiff, and concluded that she was able to understand and remember simple and moderately complex instructions, and probably complex instructions. (Tr. 230). He also opined that plaintiff was able to sustain concentration and persistence on simple and moderately complex tasks and possibly complex

---

[3]To the extent plaintiff argues that the ALJ failed to consider the mental limitations set forth in the medical statement prepared by Dr. Mendez on May 1, 2003, a review of the record as a whole does not compel a finding of error.

10

tasks. (Id). Dr. Lutz also found plaintiff capable of interacting in most social situations and able to adapt to her environment. (Id).

Pursuant to a request by Disability Determinations, Dr. Lewis reviewed Dr. Lutz's report. Dr. Lewis found that plaintiff suffered from anxiety-related disorders, under Listing 12.06, but that it was not severe. (Tr. 232). She described plaintiff's anxiety as a recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on average of at least once a week. (Tr. 237). However, Dr. Lewis opined that under the "B" criteria of the Listings, plaintiff was only mildly restricted in activities of daily living, and experienced only mild difficulties in maintaining social functioning, concentration, and persistence. (Tr. 242). Based upon the evidence received, Dr. Lewis did not find that it established the presence of the "C" criteria. (Tr. 243).

The ALJ essentially adopted these findings and determined that plaintiff suffered only mild limitations in her daily activities and in her ability to socially interact with others, and experienced only mild difficulty with maintaining concentration and persistence. (Tr. 20). This was error. First, it is noted that the ALJ adopted the findings of Dr. Lutz, which were admittedly based on nothing more than plaintiff's presentments. (Tr. 226). Yet, it was upon this same basis that the ALJ gave little weight to Dr. Glynn's opinion. Further, Dr. Lutz acknowledged that no additional information was available for review. (Id). This contradicts the ALJ's reason for discrediting Dr. Glynn's opinion because of his reliance on plaintiff's complaints. Second, reports by consulting physicians who examine a plaintiff once is not substantial evidence in a social security disability case. Bowman v. Barnhart, 310 F.3d 1080, 1085 (8th Cir. 2002).

11

In adopting the opinions of the consultative physicians, which were not entitled to any significant weight, the ALJ formulated hypothetical questions based on these findings which did not constitute substantial evidence. As a result, the opinion expressed by the vocational, in reliance on these findings, that plaintiff could perform past relevant work also fails to constitute substantial evidence. Singh, at 453.

Credibility

Plaintiff contends that the ALJ failed to properly consider her subjective complaints of pain. In assessing a claimant's subjective complaints, the ALJ is required to consider all available evidence on the record as a whole and is required to make an express credibility determination. Dixon v. Barnhart, 353 F.3d 602 (8th Cir. 2003). Because of the difficulty evaluating medical symptoms such as pain and suffering, guidelines have been established for evaluating a claimant's subjective complaints. Dixon, at 605. In undertaking a credibility analysis the ALJ must consider all of the evidence presented relating to subjective complaints, the claimant's prior work history, and observations by third parties and treating and examining physicians relating to the claimant's daily activities; the duration, frequency, and intensity of pain; precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and functional restrictions. Dixon, at 605; Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

In assessing plaintiff's credibility, the ALJ considered plaintiff's daily activities, including cleaning, shopping, cooking, and maintaining a residence, and found that plaintiff's degree of limitation was mild. (Tr. 19-20). This does not, however, compel a finding of no disability, for light housework does not comport with full time competitive work. Gillette v. Barnhart, 291 F.Supp.2d

12

1071, 1078 (D.N.D 2003). The ALJ also noted plaintiff's subjective complaints of pain, as well as the testimony of plaintiff's friend, Terry Rayford, which essentially mirrored plaintiff's claims. (Tr. 22). In further consideration of plaintiff's credibility, the ALJ found that plaintiff had a poor work record, and that her recent unemployment status was as a result of a layoff, rather than impairments. (Id). The ALJ then noted that, as opposed to medical opinions recommending that plaintiff lie down or eschew employment, Dr. Jarek recommended regular exercise. (Id). Finally, the ALJ considered the medical source statement completed by Dr. Glynn, and found that there was no objective evidence in support of his opinion, and to the extent his opinion was based on plaintiff's statements to him, it was not entitled to great weight. (Id). The ALJ ultimately concluded that the subjective complaints were not supported by "the totality of the medical and other evidence of record." (Id). All in all, the evidence of record weighed both against and in favor of plaintiff's credibility, but the most significant error, as noted above, was in giving more weight to the opinions of consulting physicians who examined plaintiff once. Especially when, as here, the consulting opinions were not supported by better and more thorough medical evidence. Dixon v. Barnhart, 353 F.3d at 606.

Conclusion

In sum, remand is necessary for the ALJ to properly evaluate plaintiff's condition of fibromyalgia, and reconsider whether it constitutes a severe impairment, and, if so, whether it is disabling. Garza v. Barnhart, 397 F.3d at 1089. Further consideration should also be given as to the debilitating effects it has on her ability to perform basic work activities in the sometimes competitive and stressful conditions in the real world. Id.

Accordingly, it is hereby

13

ORDERED that plaintiff's request for judgment is GRANTED, and the decision of the Commissioner of Social Security is REVERSED. The above captioned case is REMANDED to the Commissioner for reconsideration consistent with this opinion, pursuant to 42 U.S.C. § 405(g). The clerk is directed to enter judgment in favor of plaintiff.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

March 13, 2006

Kansas City, Missouri